UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| DELUXE FINANCIAL SERVICES, LLC, | ) <br> ) <br> ) Civil No. 0:16-cv-03065-JRT-HB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Plaintiff, | |
| vs. | |
| BRIAN S. SHAW and HARLAND CLARKE CORP., | |
| Defendants. | |

**DEFENDANT HARLAND CLARKE CORP.'S
MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS**

Under Federal Rule of Civil Procedure 12(b)(6), Defendant Harland Clarke Corp. moves to dismiss Plaintiff Deluxe Financial Services, LLC's First Amended Complaint to the extent that it asserts claims against Harland Clarke.

## I.   PRELIMINARY STATEMENT

Deluxe's lawsuit against Harland Clarke is its latest tactic in an improper effort to prevent Harland Clarke from fairly competing in the marketplace. As the Amended Complaint alleges, Harland Clarke hired Defendant Brian Shaw, a former Deluxe employee, earlier this year, nearly two years after Deluxe terminated him, and only after his non-compete covenant with Deluxe had expired. Shortly after Shaw joined Harland Clarke, Deluxe began sending Shaw and Harland Clarke letters threatening legal action if Shaw used any of Deluxe's confidential information while at Harland Clarke. Months later, when a former Deluxe customer moved its business to Harland Clarke following an open bidding process, Deluxe accused Shaw of improperly downloading Deluxe files before he left the company, by then well over two years earlier. In response, Harland Clarke went to lengths to cooperate with Deluxe and to investigate Deluxe's allegations. But despite Harland Clarke's cooperation and transparency, Deluxe would not be dissuaded. It filed an initial Complaint against Shaw, asserting claims for breach of contract, trade-secret misappropriation, and common-law torts. And then, when Harland Clarke declined to accede to its increasingly intrusive requests for data, it accused Harland Clarke of improperly investigating Shaw's alleged conduct and amended its Complaint to include trade-secret and tort claims against Harland Clarke.

Deluxe's Amended Complaint fails, however, to state a claim against Harland Clarke. Deluxe has not pleaded facts demonstrating that Harland Clarke improperly acquired, much less used or disclosed, any of its trade-secret information. In particular, it has not adequately pleaded

1

that Harland Clarke acquired or used any trade-secret information relating to the former Deluxe customer at issue. This flaw is fatal to the Amended Complaint's trade-secret claims, under both the federal Defend Trade Secrets Act and Ohio's Uniform Trade Secret Act. Further, the Amended Complaint's common-law claims for tortious interference and unjust enrichment are preempted by state trade-secret law, because they simply repackage the factual allegations underlying Deluxe's trade-secret claims. As a result, Deluxe's Amended Complaint must be dismissed with respect to Harland Clarke.

## II. STATEMENT OF THE CASE

Deluxe and Harland Clarke are the two largest check printers for financial institutions in the United States. They are competitors. (*See* Am. Compl. (Doc. No. 14) ¶¶ 3-4.)[1]

### A. Shaw's Employment with Deluxe

Defendant Brian Shaw was employed by Deluxe for almost 25 years. During that period, he worked as a Business Development Executive and was involved in structuring pitches for Deluxe customers. (*See* Am. Compl. ¶¶ 15-17.) In 2012, he entered into a Non-Competition, Non-Solicitation, Confidentiality Agreement with Deluxe. (*See id.* ¶ 23.) By its express terms, the Agreement's non-competition covenant is set to expire 18 months after Shaw's employment ends. Similarly, its non-solicitation period, during which Shaw would have been prohibited from soliciting current Deluxe customers, terminates two years after Shaw's employment ends. (*See id.* ¶¶ 23, 48, Ex. A §§ 2.1, 2.4.) In May 2014, Deluxe eliminated Shaw's position and advised him that he would no longer have a role at the company. (Am. Compl. ¶ 39.)

---

[1] For the purposes of this motion to dismiss only, Harland Clarke is relying on, and not challenging, the Amended Complaint's factual allegations.

2

### B. Shaw's Employment with Harland Clarke

Shaw joined Harland Clarke in February 2016. That was over 20 months after Deluxe terminated his employment, and after his contractual non-competition covenant had expired. At Harland Clarke, he worked in a business development role. (Am. Compl. ¶¶ 8, 48.)

Just weeks after Shaw joined Harland Clarke, Deluxe and its lawyers began sending Shaw, and Harland Clarke, letters regarding the consequences of any breach of his confidentiality obligations to Deluxe. (*See id.* ¶¶ 55, 57.) For instance, on May 18, 2016, Deluxe's General Counsel sent Shaw a letter, with a copy to Harland Clarke's CEO, purporting to further "remind" Shaw of those obligations and stating that "Deluxe reserves the right to pursue all remedies available to it in the event it determines that a violation of your obligations under the Confidentiality Agreement or otherwise has occurred or is likely to occur." (*See* Decl. of Brett J Broadwater dated Dec. 5, 2016 ("Broadwater Decl."), Ex. A.)).[2] Harland Clarke responded on Shaw's behalf, confirming that, as the company had stated in response to an even earlier letter from Deluxe's outside counsel, Shaw had acknowledged his confidentiality obligations to Deluxe and that Shaw had not and would not "take any action to compromise Deluxe confidential Information." (Broadwater Decl., Ex, B.)

### C. Deluxe's Accusations Against Shaw and Harland Clarke's Efforts to Investigate

In the summer of 2016, as its existing contract with Deluxe was expiring, a financial institution circulated a request for proposals, or RFP, for a new multi-year contract. As part of an

---

[2] Harland Clarke is attaching to its motion to dismiss only extra-pleading materials that Deluxe described, or incorporated by reference, in its Amended Complaint. The Court may consider any such materials on a motion under Rule 12(b)(6). *See Pipar Jaffary Cos., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 867 F. Supp. 1148, 1152 (D. Minn. 1997) ("[T]he Court *may* consider extra-pleading materials necessarily embraced by the pleadings . . . and all documents they incorporate by reference." (citation omitted).)

3

open bidding process, Harland Clarke and Deluxe submitted competing proposals. The financial institution ultimately accepted Harland Clarke's proposal. (*See* Am. Compl. ¶¶ 53-54.)

Shortly after the RFP process ended, on August 23, 2016, Deluxe's outside counsel sent Harland Clarke a letter asserting that Deluxe had recently uncovered information indicating that, in May 2014, some two-plus years earlier, Shaw had downloaded customer-related files to several USB devices and forwarded Deluxe-related e-mails to his personal e-mail account in the final days of his Deluxe employment. (*See id.* ¶ 57.)[3] Deluxe's letter specifically requested, among other things, that Harland Clarke return to Deluxe any USB device in Shaw's possession that contained any Deluxe files. (*See id.*)

Harland Clarke promptly undertook efforts to cooperate with Deluxe. (*See* Am. Compl. ¶ 58.) While it worked with Shaw to locate any USB devices that he may have used two years earlier, Harland Clarke's counsel searched Shaw's personal e-mail account for Deluxe-related files. In a letter on August 29, 2016, Harland Clarke's counsel advised Deluxe of its efforts, including that it had confirmed that no one who worked on the 2016 RFP at issue had received Deluxe confidential information from Shaw. (*See id.* ¶ 58; Broadwater Decl., Ex. C.) In communications over the next several weeks, Harland Clarke's counsel reported to Deluxe's counsel the findings of its investigation of Shaw's USB devices. (*See id.* ¶¶ 58-63.)

As the investigation continued, Deluxe demanded more information regarding Shaw's computer and USB devices. (*See* Am. Compl. ¶ 60.) When Shaw located additional USB devices and provided them to Harland Clarke, Harland Clarke promptly advised Deluxe. (*See id.* ¶¶ 61-62; *see also id.* ¶ 67.) To determine whether these USB devices potentially contained Deluxe information, Harland Clarke engaged the head of its Digital Forensics, Incident Response, or

---

[3] This information was available to Deluxe at all relevant times. Deluxe apparently chose not to investigate the matter until it lost the open bidding process.

4

DFIR, team. Then, consistent with Deluxe's request that Harland Clarke return any of Shaw's USB devices containing Deluxe files, that forensic specialist generated a simple "file name" list in order to assess whether, based on file names alone, documents on the devices appeared to be Deluxe files. (*See id.* ¶¶ 62-63.) Harland Clarke then reported its findings to Deluxe in a detailed "Chain of Custody" report, as requested by Deluxe's counsel. (*See* Broadwater Decl., Ex. D.) As that report made clear, during the investigation, the only individuals who viewed the "file name" information were Harland Clarke's forensic specialist and members of Harland Clarke's legal team, including outside counsel. (*See id.*; *see also* Am. Compl. ¶ 63 ("[T]he Harland Clarke employee searched for Deluxe files and provided a file listing of Deluxe file names found on the devices to other Harland Clarke personnel.").) The report also explained that, as a part of the investigation, "[n]o one from Harland Clarke [had] viewed the content of any [Deluxe] files or received a report describing the contents of any such files." (*See* Broadwater Decl., Ex. D.)

### D. Deluxe's Lawsuit

As Harland Clarke was working with Deluxe to investigate its claim that Shaw had impermissibly retained Deluxe files, on September 14, 2016, Deluxe sued Shaw. Deluxe's initial Complaint asserted five clams against Shaw, for breach of contract, breach of loyalty, trade-secret misappropriation under the recently enacted federal Defend Trade Secrets Act, trade-secret misappropriation under Ohio's Uniform Trade Secret Act, and tortious interference. (*See* Compl. (Doc. No. 1) ¶¶ 53-91.) The initial Complaint alleged that, while at Deluxe, Shaw had access to "Confidential Sales Information," which it defined broadly as "customer pricing data, production costs, check unit volumes, profitability, sales analyses, sales strategies, deal structures, sales plans, 'key account' data, check program management techniques, and account details." (*Id.* ¶¶ 16-17.) The initial Complaint also focused on Shaw's allegedly impermissible downloading of Deluxe files before he left the company. (*See id.* ¶¶ 37-44.) Finally, the initial Complaint alleged,

5

in conclusory fashion, that "[u]pon information and belief, Shaw used Confidential Sales Information" as part of the 2016 RFP process. (*See id.* ¶ 49.)

Despite the suit against Shaw, Harland Clarke continued to assist Deluxe in its investigation. (*See* Am. Compl. ¶¶ 58-64, 67; Broadwater Decl., Ex. D.) On November 7, 2016, Deluxe amended its Complaint to include Harland Clarke in its claims for trade-secret misappropriation and tortious inference and to add a claim for unjust enrichment against both Shaw and Harland Clarke. The Amended Complaint repeats, near verbatim, nearly all of the factual allegations made in the initial Complaint, including those regarding Shaw's access to "Confidential Sales Information" and those regarding his alleged downloading of Deluxe files. (*Compare* Compl. ¶¶ 16-17 and 37-44 *with* Am. Compl. ¶¶ 18-19 and 39-47.) The Amended Complaint also includes the same conclusory allegations regarding Shaw's use of "Confidential Sales Information" in the 2016 RFP process without identifying any such information, how it was taken, how it was allegedly used, or even whether it related to the customer at issue. (*Compare* Compl. ¶ 49 *with* Am. Compl. ¶ 53.) Further, it does not allege that Shaw accessed or used any information from any of the files that he allegedly impermissibly downloaded in connection with the RFP process or that any of those files actually contained Confidential Sales Information, as defined in the Complaint. In terms of new factual allegations, the Amended Complaint criticizes Harland Clarke's efforts to investigate Shaw's alleged conduct, asserting that, by responding to Deluxe's demands for information, Harland Clarke itself somehow acquired Deluxe's confidential information and trade secrets. (*See* Am. Comp. ¶¶ 57-63.)

### III.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Braden v. Wal-Mart Store, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting

6

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible on its face when it is supported by "pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. Stated differently, the claim's "[f]actual allegations must be enough to raise a right to relief above the speculative level" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts need not accept, and can ignore, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

## IV. ARGUMENT

### A. The Amended Complaint Fails to State a Claim for Trade-Secret Misappropriation Against Harland Clarke.

Deluxe has failed to plead facts demonstrating each of the essential elements of its trade-secret claims against Harland Clarke: that anyone at Harland Clarke (a) improperly acquired or used (b) information constituting trade secrets.

1. <u>Applicable Law.</u>

Deluxe has asserted misappropriation claims against Harland Clarke under both the federal Defend Trade Secrets Act and Ohio's Uniform Trade Secret Act.[4] The key provisions of these statutes relevant to the present motion to dismiss are substantively the same.[5] Each Act

---

[4] Deluxe appears to assume that Ohio's trade-secret law applies to Harland Clarke—a Texas-based company—apparently because Shaw's Non-Competition, Non-Solicitation, Confidentiality Agreement with Deluxe states that disputes under it shall be governed by the law of the state in which Shaw resides, Ohio. (Am. Compl. ¶ 28.) Harland Clarke is not, however, a party to that Agreement, and so the Agreement's choice-of-law provision does not govern claims against Harland Clarke. *See Holden Farms, Inc. v. Hog Slat Inc.*, 347 F. 3d 1055, 1063-64 (8th Cir. 2003) (holding that choice-of-law provision did not apply to defendant when not party to contract).

[5] Ohio is one of over 45 states that have adopted a version of the model Uniform Trade Secrets Act. The differences between states' respective versions of the model Uniform Act are often minor. But the differences between versions can at times be case dispositive. *See, e.g.*, S. Rep. No. 1140229, at 2 (2016) (discussing areas of difference). The federal Defend Trade Secrets Act

7

defines a trade secret as information that (a) "derives independent economic value, actual or potential, from being not generally known to, or readily ascertainable through proper means by," other persons who could obtain economic value from the information's use or disclosure; and (b) has been subject to "reasonable" measures or efforts to maintain its secrecy. *Compare* 18 U.S.C. § 1839(3)(A)-(B) *with* O.R.C. § 1333.61(D)(1)-(2). And each Act defines misappropriation as improper acquisition, use, or disclosure of a trade secret: "[a]cquisition of a trade secret . . . by a person who knows or has reason to know that the trade secret was acquired by improper means"; "[d]isclosure or use of a trade secret . . . without . . . express or implied consent . . . by a person who . . . used improper means to acquire" the trade secret; or disclosure or use by someone who knew that his or her knowledge of the trade secret was "derived from . . . a person who had utilized improper means to acquire" the trade secret, was "acquired under circumstances giving rise to a duty to maintain [the trade secret's] secrecy or limit [its] use," or was "derived from or through a person who owed a duty to the person seeking relief to maintain [the trade secret's] secrecy or limits [its] use." *Compare* 18 U.S.C. § 1839(5)(A)-(B) *with* O.R.C. § 1333.61(B)(1)-(2). Further, courts have interpreted the Uniform Act's definition to require scienter on the part of the alleged misappropriating party. *See, e.g., Infinity Prods. Inc. v. Quandt*, 810 N.E.2d 1028, 1033-34 (Ind. 2004) (holding that Uniform Act's scienter requirement for misappropriation conflicts with common-law respondeat superior).

To state a claim under either the federal Act or the state Uniform Act, a plaintiff must plead facts demonstrating both the existence of a trade secret and its misappropriation, and failure to do so requires dismissal. *See, e.g., M.C. Dean, Inc. v. City of Miami Beach Florida*, ---

---

was enacted, in mid-2016, to provide a federal right of action for trade-secret misappropriation. Many of its definitions were intended to mirror those of the model Uniform Act. *See id.* at 10 (discussing intent to bring federal definitions of "trade secret" and "misappropriation" into conformity with Uniform Act).

F. Supp. 3d ---, 2016 WL 4179807, at *8 (S.D. Fla. Aug. 8, 2016) (dismissing claim under DTSA where plaintiff failed to plead facts establishing either existence of trade secret or misappropriation); *Hot Stuff Foods, LLC, v. Dornbach*, 726 F. Supp. 2d 1038, 1043-44 (D. Minn. 2010) (J. Doty) (applying Minnesota's Uniform Trade Secret Act and dismissing misappropriation claim because plaintiff failed to plead facts, as opposed to mere conclusory statements, demonstrating that confidential pricing and strategic information at issue derived independent economic value on account of its secrecy, was not readily ascertainable to others, and had been subject to reasonable measures to maintain its secrecy).

    2. <u>Deluxe fails to plead facts establishing that Harland Clarke misappropriated—whether by acquisition, use, or disclosure—any specified trade-secret.</u>

Deluxe's Amended Complaint against Harland Clarke rests on three sets of factual allegations: (a) those relating to Shaw's downloading of unspecified Deluxe information years before he came to work at Harland Clarke; (b) the allegation "upon information and belief" that Shaw used some unspecified Deluxe trade secret in some unspecified way in the 2016 RFP process, which process ultimately led to a former Deluxe customer to enter into a business relationship with Harland Clarke; and (c) those relating to Harland Clarke's investigation into Shaw's conduct, done in response to Deluxe's request. None of those allegations is sufficient to state a misappropriation claim.

    *(a) Shaw's allegedly improperly acquisition of Deluxe files before he joined Harland Clarke*

Shaw's allegedly impermissible downloading and retention of Deluxe files cannot give rise to a misappropriation claim against Harland Clarke. That alleged acquisition took place in May 2014, years before Shaw joined Harland Clarke. (*See* Am. Compl. ¶¶ 40-46 (discussing

9

Shaw's alleged conduct from May 17 to 21, 2014).)[6] There is no allegation that Harland Clarke was aware of the alleged acquisition before Deluxe's letter in August 2016. And Deluxe cannot state a misappropriation claim against Harland Clarke simply because Shaw allegedly retained Deluxe's files when he left the company and then joined Harland Clarke after his non-compete covenant had expired. *See Ciena Comms., Inc. v. Nachazel*, 09-cv-02845, 2010 WL 3489915, at *4 (D. Colo. Aug. 31, 2010) (granting motion to dismiss trade-secret claim based on employee's alleged acquisition prior to joining defendant company).[7]

*(b) Shaw's allegedly improper use of Deluxe trade secrets in the 2016 RFP process*

Deluxe's misappropriation claims based on the 2016 RFP process fail because the Amended Complaint does not allege facts to support the claim that Harland Clarke ever acquired or used any alleged trade secrets. Here, Deluxe's Amended Complaint boils down to the allegations that Shaw had access to Deluxe Confidential Sales Information before he came to work at Harland Clarke and that Shaw later participated in the 2016 RFP process. From there, Deluxe simply speculates—pleading only in conclusory fashion and "upon information and belief"—that Shaw must have used Deluxe Confidential Sales Information in the RFP process. (Am. Compl. ¶ 53.)[8] But Deluxe does not, because it cannot, allege any facts supporting those

---

[6] Shaw's alleged impermissible downloads also took place before the Defend Trade Secrets Act became effective on May 11, 2016. As a result, allegations based on those downloads cannot support a federal claim for trade-secret misappropriation. *See Dazzle Software II, LLC v. Kinney*, 16-cv-12191, 2016 WL 6248906, at *1 (E.D. Mich. Aug. 22, 2016) (dismissing DTSA claim based on misappropriation pre-dating DTSA's effective date).

[7] The Amended Complaint alleges in conclusory fashion that Shaw accessed unspecified "Deluxe files" while he was employed at Harland Clarke, (*see* Am. Compl. 65-66), but it does not allege that those files contained Confidential Sales Information or any other information entitled to protection as a trade-secret.

[8] Since the Supreme Court's *Iqbal* and *Twombly* decisions clarifying Federal Rule 8(a)'s fact-pleading standard, certain federal courts have expressed skepticism regarding "information and belief" allegations. *See, e.g., In re Darvocet, Davorn, and Propoxyphene Prods. Liab. Litig.*, 756

10

assumptions. What Deluxe fails to allege is more telling than what it does allege. Deluxe does not: (i) allege that Shaw copied or downloaded Confidential Sales Information, as defined in the Amended Complaint; (ii) identify what Confidential Sales Information, or even what category of thereof, was allegedly used in the RFP process; (iii) allege how any such information was used; (iv) allege that any Confidential Sales Information that was used related to the customer at issue; or (v) explain how information that Shaw acquired in 2014 retained independent economic value in 2016. These failures doom Deluxe's claims.

Deluxe's allegation of use based "upon information and belief" cannot state a claim against Harland Clarke unless the facts pleaded in the Amended Complaint give rise to a reasonable inference that Harland Clarke in fact used improperly acquired Deluxe Confidential Sales Information in the 2016 RFP process and knew or should have known that it was doing so. *See* 18 U.S.C. § 1839(5)(B)(ii)(I)-(III); O.R.C. § 1333.61(B)(2)(a)-(c); *see also Ciena Comms.*, 2010 WL 3489915 at *4 ("The [Uniform] Act requires that the person accused of misappropriation both 'possess a trade secret' and 'kn[o]w or should [know] that the trade secret was acquired by improper means.'"); *Infinity Prods. Inc.*, 810 N.E.2d at 1033-34 (discussing scienter requirement for misappropriation.) Such an inference is not reasonable in these circumstances.

That a former employee like Shaw had access to Confidential Sales Information and was involved in competing with his former employer after his non-compete and non-solicitation agreements expired means at most that it is possible he misused such information—not that it is plausible to infer that he in fact did so. *See Elec. Planroom, Inc. v. McGraw-Hill Companies,*

---

F.3d 917, 931 (6th Cir. 2014) ("The mere fact that someone believes something to be true does not create a plausible inference that it is true." (citing *Twombly*, 550 U.S. at 551)). Such allegations are inferences, at best, as opposed to facts. The test is, then, whether those inferences are reasonable based on the facts actually pleaded. Here, Deluxe's inferences are not.

11

*Inc.*, 135 F. Supp. 2d 805, 822 (E.D. Mich. 2001) (granting summary judgment to former employee when former employer "offers nothing beyond speculation as to the purported connection between [former employee's] removal of trade secret information and his former employer's declining sales and loss of customers").[9] Such "sheer possibility" pleading fails to meet the *Iqbal-Twombly* standard. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" (citing *Twombly*, 550 U.S. at 557)).

In addition, Deluxe has failed to identify any particular information entitled to trade-secret protection that Shaw allegedly used in the 2016 RFP process. Deluxe alleges that Shaw had access to a laundry list of "Confidential Sales Information" while at Deluxe but never says what information was allegedly misused in the RFP process. (*Compare* Am. Compl. ¶¶ 18-19 *with* ¶ 53.) That failure is fatal to its misappropriation claim against Harland Clarke.

The conclusory nature of Deluxe's allegations concerning what information was supposedly used in the 2016 RFP process is particularly glaring given that the Amended Complaint's definition of "Confidential Sales Information" includes several categories of information—like "customer pricing data . . . check unit volumes . . . [and] deal structures"—that would routinely be shared with customers in the ordinary course of business. (*See* Am. Compl. ¶ 53.) "[D]isclosure to potential or actual customers, *absent a confidentiality agreement or understanding*, will destroy any protection . . . as a trade secret." *Thermodyn Corp. v. 3M Co.*,

---

[9] The Amended Complaint does not allege that the files that Shaw allegedly impermissibly retained after leaving Deluxe contained any Confidential Sales Information whatsoever. While it does allege that Shaw downloaded files relating to the customer at issue in the 2016 RFP process, it does not allege that those files contained Confidential Sales Information or that Shaw accessed those files or used any information from such files in connection with the RFP process. (*See* Am. Compl. ¶¶ 52-53.)

593 F. Supp. 2d 972, 986 (N.D. Ohio) (emphasis added). "Merely stating that the [Confidential Sales Information] is confidential is insufficient." *Hot Stuff Foods*, 726 F. Supp. 2d at 1044. The Amended Complaint does nothing to identify what Confidential Sales Information Shaw allegedly used in the 2016 RFP process that its former customer did not already know. Pricing-related information, like pricing incentives, and the overall structure of a deal do not constitute trade secrets if disclosed to the customer without a corresponding obligation to maintain that information's secrecy. The Amended Complaint is, however, conspicuously silent regarding any agreement or understanding of confidentiality between Deluxe and its former customer.

Finally, the Amended Complaint fails to explain how information that Shaw had access to in May 2014 could have plausibly retained its independent economic value by the time of the 2016 RFP process—over two years later and after both Shaw's non-compete and non-solicitation periods had expired. *See Katch, LLC v. Sweetser*, 143 F. Supp. 3d 854, 868 (D. Minn. 2015) ("[I]nformation that has or will quickly become obsolete does not have the independent economic value to be considered a trade secret. Customer lists, pricing information, long-term sales strategies, and customer buying habits do not necessarily constitute trade secrets." (citations omitted)); *Hot Stuff Foods*, 726 F. Supp. 2d at 1043-44 (dismissing claims based on downloaded confidential pricing and business-planning information, including a "Rebate Calculator," sales forecasts listing "Targeted New Accounts," and other strategic pricing and planning documents because, among other things, plaintiff failed to plead facts demonstrating that the allegedly confidential information had independent economic value). Accordingly, the Amended Complaint fails to plead facts demonstrating that the unspecified "Confidential Sales Information" supposedly used by Shaw in the RFP process constitutes confidential information entitled to trade-secret protection under either federal or state law.

*(c) Harland Clarke's efforts to investigate Shaw's alleged misappropriation*

The Amended Complaint does not state a claim based on any information allegedly acquired by Harland Clarke as part of its good-faith effort to investigate Shaw's misconduct, at Deluxe's request. (*See* Am. Compl. ¶¶ 57-63.) Deluxe has not pleaded, and cannot plead, facts demonstrating that any such information constituted a Deluxe trade secret or that Harland Clarke intended to misappropriate a Deluxe trade secret. While the Amended Complaint attempts to make much of the fact that Harland Clarke's forensic specialist accessed Shaw's USB devices, the only information that specialist reviewed or shared with Harland Clarke's legal team was a list of file names. (*See id.* ¶¶ 62-63; *see also* Broadwater Decl., Ex. D.) File names, whether alone or in compilation, cannot plausibly constitute information deriving economic value on account of their secrecy. Nor can Deluxe plausibly allege that Harland Clarke's investigation constituted improper means aimed at acquiring Deluxe's trade secrets. Harland Clarke simply obtained USB devices from Shaw at Deluxe's request, created a file-name list to evaluate whether any of the devices contained Deluxe information, and then turned the USB devices over to Deluxe. (*See* Am. Compl. ¶¶ 62-63.) All of that was done by Harland Clarke in response to a request from Deluxe, and there was nothing improper or unlawful about that investigation.

**B. The Amended Complaint's Claims for Tortious Interference and Unjust Enrichment Are Preempted by State Trade-Secret Law.**

The Amended Complaint's two common-law tort claims against Harland Clarke, for tortious interference and unjust enrichment, fail as a matter of law and should be dismissed.

The Uniform Trade Secrets Act contains a preemption provision that displaces "conflicting tort, restitutionary, or other [state] laws . . . providing civil remedies for

misappropriation of [a] trade secret." *See, e.g.*, O.R.C. § 1333.67(A); M.S.A. § 325.07(a).[10] Courts across the country have interpreted this statutory provision as displacing common-law tort claims to the extent that those claims are based on the same facts as an alleged misappropriation of trade secrets. *See Stolle Machinery Co., LLC v. RAM Precision Indust.*, 605 Fed. App'x. 473, 484-85 (6th Cir. 2015) (discussing majority approach). Further, a majority of courts, including those interpreting Ohio's Uniform Trade Secret Act, have held that this preemption occurs even when the allegedly misappropriated information does not rise to the level of a trade secret. *See id.* at 484. Thus, claims for tortious interference or unjust enrichment fail as a matter of law where they are based on an alleged misappropriation of information, trade secret or otherwise, or the same operative factual allegations underlying that misappropriation. *See, e.g., Allied Erecting and Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp. 2d 702, 720-22 (N.D. Ohio ) (applying Ohio law and holding that claims for tortious interference and breach of fiduciary duty were preempted).[11]

The Amended Complaint's tortious-interference and unjust-enrichment claims against Harland Clarke are based on the same factual allegations as its trade-secret misappropriation claims. (*See* Am. Compl. ¶¶ 107-111 (incorporating facts and basing tortious inference on theory that "through Shaw's breach of his legal obligations" Defendants "diverted the business of an existing customer"); and ¶¶ 112-116 (incorporating facts and basing unjust enrichment on

---

[10] As discussed in footnote 4, *supra*, Deluxe assumes that Ohio's Uniform Trade Secret Act is the appropriate state trade-secret law to apply against Harland Clarke, without stating a basis for doing so in the Amended Complaint. Harland Clarke reserves the right to brief the choice-of-law issue at a later stage.

[11] The Uniform Trade Secrets Act preempts common-law claims even when a plaintiff's trade-secret claim also fails. *See Stolle Machinery*, 605 Fed. App'x. at 486-87 (upholding district court's ruling that tortious interference claim was preempted under Ohio's Uniform Trade Secret Act in case where plaintiff's trade-secret claims against certain defendants were time-barred).

15

theory that through "use and disclosure of Deluxe confidential, proprietary, and trade-secret information . . . Defendants have intentionally and unjustly enriched themselves").) Deluxe attempts, essentially, to repackage a statutory claim addressing one alleged wrong as two additional common-law claims addressing the same alleged wrong. The Uniform Trade Secret Act prohibits this, and the Court should dismiss those common-law claims as a matter of law.

## V.  CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiff Deluxe Financial Services, LLC's Amended Complaint to the extent that it asserts claims against Defendant Harland Clarke Corp. Deluxe's claims for trade-secret misappropriation fail to state a claim under either federal or state law. And Deluxe's common-law tort claims for tortious interference and unjust enrichment are preempted by the state-law Uniform Trade Secrets Act.

Dated:  December 5, 2016

JONES DAY

James Sottile IV, NY Atty #5127634
*jsottile@jonesday.com (pro hac vice)*
Brett J. Broadwater, NY Atty #4707402
*bbroadwater@jonesday.com (pro hac vice)*
250 Vesey Street
New York, NY 10281
(212) 326-3939

Roy A. Ginsburg, MN Atty #0123158
*rginsburg@jonesday.com*
Richard Liu, MN Atty #0398214
*rliu@jonesday.com*
90 South Seventh Street
Suite 5090
Minneapolis, MN 55402
(612) 607-7950

*Attorneys for Defendant Harland Clarke Corp.*