UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| DELUXE FINANCIAL SERVICES, LLC, | Civil No. 16-3065 (JRT/HB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS** |
| BRIAN S. SHAW and HARLAND CLARKE CORP., | |
| Defendants. | |

Charles F. Knapp, **FAEGRE BAKER DANIELS LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402, for plaintiff.

Jillian M. Flower, **JACKSON LEWIS PC**, 150 South Fifth Street, Suite 3500, Minneapolis, MN 55402, for defendant Brian S. Shaw.

James Sottile, IV and Brett J. Broadwater, **JONES DAY**, 250 Vesey Street, New York, NY 10281, Richard Q. Liu, **JONES DAY**, 90 South Seventh Street, Suite 4950, Minneapolis, MN 55402, for defendant Harland Clarke Corp.

Plaintiff Deluxe Financial Services, LLC, ("Deluxe") brings this action against Defendants Brian S. Shaw and Harland Clarke Corp. ("Harland Clarke") (collectively, "Defendants"). Deluxe brought claims against Defendants for misappropriation of trade secrets under the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836, *et seq.*; misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act ("OUTSA"), Ohio Rev. Code §§ 1333.61, *et seq.*; tortious interference; and unjust enrichment.

Defendants move to dismiss those claims under Fed. R. Civ. P. 12(b)(6) contending that: (1) Deluxe fails to state a claim for trade secret misappropriation under DTSA and OUTSA, and (2) OUTSA preempts Deluxe's claims for tortious interference and unjust enrichment.

Because the Amended Complaint contains a detailed factual statement to support a trade secret misappropriation claim and Deluxe may plead alternative and inconsistent legal theories against Defendants, the Court will deny Defendants' motions to dismiss.

## BACKGROUND

### I. UNDERLYING EVENTS

Deluxe and Harland Clarke "are the two largest [financial institution] check printers in the United States. They are direct competitors." (Am. Compl. ¶ 4, Nov. 7, 2016, Docket No. 14.) Deluxe employed Shaw as a business development executive for 25 years. (*Id.* ¶¶ 8, 15.) As part of his position, Shaw structured "sophisticated deal structures and pricing strategies" to differentiate and enhance Deluxe's market position. (*Id.* ¶ 17.)

To fulfill these job duties, Shaw had access to Deluxe's trade secret information relating to "customer pricing data, production costs, check unit volumes, profitability, sales analyses, sales strategies, deal structures, sales plans, 'key account' data, check program management techniques, and account details ('Confidential Sales Information')." (*Id.* ¶ 18.) "This Confidential Sales Information is not publicly known" and Deluxe invests significant efforts to preserve its confidentiality. (*Id.* ¶¶ 20-21.)

### A. The Confidentiality Agreement Between Shaw and Deluxe

In 2012, Shaw entered into a Non-Competition, Non-Solicitation, and Confidentiality Agreement (the "Agreement") with Deluxe. (*Id.* ¶ 23; Ex. A to Am. Compl. ("Agreement"), Nov. 8, 2016, Docket No. 17.) In pertinent part, Shaw agreed that during his employment and thereafter to "hold in the strictest confidence and . . . not disclose, use, [or] publish any of [Deluxe's] Confidential Information," unless Deluxe permitted otherwise. (Agreement at 2.) The Agreement defined "Confidential Information" as "information that was developed, created, or discovered by or on behalf of [Deluxe] or any of its Affiliates, or which became or will become known by, or was or is conveyed to [Deluxe], which has commercial value in [Deluxe's] business and which [Deluxe] regards as confidential." (*Id.* at 2.) The parties intended the Agreement to ensure Confidential Information remained at the workplace, as Shaw agreed that "all of the Confidential Information is and shall be the sole property of [Deluxe] and its successors and assigns." (*Id.* at 2.)

### B. Shaw Joins Harland Clarke

In May 2014, Deluxe eliminated Shaw's position and advised him that he would no longer have a position at the company. (Am. Compl. ¶ 39.) Prior to leaving Deluxe, Shaw forwarded emails to his personal account regarding various proprietary details about Deluxe's relationship with a customer, (*id.* ¶ 40), and retained "at least nine USB devices containing confidential, proprietary, and/or trade secret business files of Deluxe," (*id.* ¶ 41, *see also id.* ¶¶ 42-47).

After the expiration of his eighteen-month non-competition agreement, Shaw joined Harland Clarke. (*Id.* ¶ 48.) In the summer of 2016, Deluxe's longstanding customer circulated a request for proposal ("RFP") for a new contract. (*Id.* ¶ 53.) While at Deluxe, Shaw retained information regarding this customer's pricing and analytics and numerous files about the customer. (*Id.* ¶¶ 51-52.) Harland Clarke and Deluxe submitted competing proposals to the customer, (*id.* ¶ 53), and Harland Clarke won the bid, (*id.* ¶¶ 9, 50).

After losing the customer, Deluxe investigated whether Shaw took Deluxe's trade secret information. (*Id.* ¶ 10.) As a result of that investigation, Deluxe allegedly learned that Shaw retained over 740 Deluxe files on his USB devices relating to Deluxe's longstanding customer, (*id.* ¶ 52), during the RFP process Shaw and Harland Clarke presented the longstanding customer "pricing, guarantees, and incentives that negated some of Deluxe's strengths, and that were not typical Harland Clarke offerings," (*id.* ¶ 53), and that "Shaw used Deluxe Confidential Sales Information to secure this customer," (*id.*). Deluxe also allegedly learned that nine USB devices that Shaw turned over to Deluxe contained over seven thousand Deluxe files improperly retained, many of which were accessed during Shaw's employment at Harland Clarke, and that at least two of the USB devices have been plugged into Shaw's Harland Clarke work computer, (*id.* ¶¶ 64-66).

## II. PROCEDURAL HISTORY

On September 14, 2016, Deluxe filed a complaint against Shaw asserting claims for breach of contract (Count I), misappropriation of trade secrets under DTSA and OUTSA (Count II and Count III), breach of duty of loyalty (Count IV), and tortious interference (Count V). (Compl. ¶¶ 53-91, Sept. 14, 2016, Docket No. 1.) On November 7, 2016, Deluxe filed the Amended Complaint, adding allegations against Harland Clarke to its DTSA and OUTSA misappropriation of trade secret claims (Count II and Count III) and tortious interference claim (Count V). (Am. Compl. ¶¶ 74-98, 107-111.) Deluxe also added a claim for unjust enrichment against both Defendants (Count VI). (*Id.* ¶¶ 112-16.) On December 5, 2016, both Defendants moved to dismiss Count II, Count III, Count V, and Count VI in the Amended Complaint. (Def. Harland Clarke's Mot. to Dismiss, Dec. 5, 2016, Docket No. 35; Def. Shaw's Mot. to Dismiss, Dec. 5, 2016, Docket No. 38.)

## DISCUSSION

## I. STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a claim for "relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## II. MISAPPROPRIATION OF TRADE SECRETS (Counts II & III)

Defendants first move to dismiss Deluxe's misappropriation of trade secrets claims under DTSA and OUTSA.[1] Both statutes provide a damages action for the "misappropriation" of a "trade secret." 18 U.S.C. §§ 1836(b)(1), 1839(5); Ohio Rev. Code §§ 1333.61(B), 1333.63(A).

### A. Plausible Claim for Relief

Defendants argue the Court should dismiss the misappropriation of trade secret claims under DTSA and OUTSA for failure to allege specific facts supporting "misappropriation" of a "trade secret." The Court disagrees.

---

[1] The Agreement also provides that it "shall be governed by the laws of the state where [Shaw] resides." (Agreement at 6.) The Amended Complaint alleges Shaw is an Ohio resident. (Am. Compl. ¶ 7.) Harland Clarke – a Texas-based company (*id.* ¶ 4) – asserts that the Agreement's choice-of-law provision does not govern Deluxe's claims against Harland Clarke because Harland Clarke is not a party to the Agreement and "reserves the right to brief the choice-of-law issue at a later stage." (Def. Harland Clarke's Mem. in Supp. of Mot. to Dismiss at 7 n.4, 15 n.10, Dec. 5, 2016, Docket No. 36.) Solely for the purpose of the motion to dismiss, the Court will assume Ohio law applies to the claims against Harland Clarke.

1. **Trade Secret**

First, a "trade secret" is defined in both statutes as information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information" and subject to "reasonable measures to keep such information secret." 18 U.S.C. § 1839(3); *see also* Ohio Rev. Code § 1333.61(D).

Deluxe has adequately alleged facts to support its claim that the Confidential Sales Information is a "trade secret" under both statutes because Deluxe alleged (1) that it undertook efforts to maintain secrecy of that information, and (2) that information would have significant value to its competitors. Deluxe explained that Shaw "had access to" Confidential Sales Information, which included "detailed customer pricing data" and "sales analysis [and] . . . strategies." (Am. Compl. ¶ 18.)

Deluxe also alleged the various efforts it took to protect the Confidential Sales Information. (*Id.* ¶¶ 30-38.) For example, Deluxe held employee training sessions on protecting trade secret information, (*id.* ¶¶ 31-32), maintained a "Code of Ethics and Business Conduct" emphasizing the importance of preserving confidentiality, (*id.* ¶ 33), established a "Protection of Company Property and Information Assets policy" which directed employees not use confidential information for any use other than Deluxe business, (*id.* ¶ 34), preserved an employee handbook requiring employees return all Deluxe assets once employment ended, (*id.* ¶ 35), and established internal information classification and control guidelines for confidential information, (*id.* ¶ 37).

Next, Deluxe unequivocally asserted that "[t]his Confidential Sales Information is not publicly known," that Deluxe "invested significant time, effort, and expense over many years to develop and preserve the confidentiality of its Confidential Sales Information," and that such information "would be of significant value to Deluxe's competitors." (*Id.* ¶¶ 20-21.)

Thus, Deluxe has alleged sufficient facts to plausibly show that the Confidential Sales Information is a trade secret.

### 2. Misappropriation

Moreover, Deluxe also pled sufficient facts to support "misappropriation" of a trade secret. "Misappropriation" is defined as "acquisition," "disclosure," or "use[]" of a trade secret obtained through "improper means."[2] 18 U.S.C. § 1839(5); *see also* Ohio Rev. Code § 1333.61(B). Deluxe alleged that Shaw "had access" to Confidential Sales Information, (*id.* ¶ 18), and that Shaw used the Confidential Sales Information "to secure [Deluxe's longstanding] customer," (*id.* ¶ 53). Thus, Deluxe alleged that Shaw acquired its trade secret information by improper means, and then improperly used or disclosed

---

[2] Both DTSA and OUTSA define "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A); Ohio Rev. Code § 1331.61(A). But DTSA provides that the term "improper means . . . does not include reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6)(B).

that information while working at Harland Clarke.[3]  Such an allegation suffices under both statutes to state a claim of trade secret misappropriation against Shaw.

B.    **Vicarious Liability**

Harland Clarke also asserts that, even if sufficient facts are alleged against Shaw to plead an OUTSA claim, the Court should dismiss the misappropriation of trade secret claims against Harland Clark because vicarious liability does not exist under OUTSA.[4] Ohio recognizes that "[g]enerally, an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of respondeat superior." *Nat'l Union Fire Ins. Co. of Pittsburg v. Wuerth*, 913 N.E. 2d 939, 943 (Ohio 2009) (quoting *Clark v. Southview Hosp. & Family Health Ctr.*, 628 N.E.2d 46, 48 (Ohio 1994)).  But OUTSA does not expressly address whether vicarious liability exists and Ohio courts have not yet weighed in on the issue.  Thus, in the absence of controlling law from the Ohio Supreme Court, the Court must predict whether the Ohio Supreme Court would conclude an

---

[3] Harland Clarke argues Deluxe does not identify what Confidential Sales Information Harland Clarke allegedly used in the RFP process or explain how such information Shaw acquired in 2014 retained independent economic value in 2016.  However, Deluxe does not need to identify trade secrets with specificity in the Amended Complaint pursuant to Fed. R. Civ. P. 8 because identifying trade secrets with specificity would paradoxically jeopardize protecting those trade secrets.  *See SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC*, 292 F. Supp. 2d 1173, 1179 (D. Minn. 2003) ("Rule 8 does not require the specificity Defendants seek.  The exact nature of the trade secret is a matter for discovery." (citations omitted)).  Here, Deluxe pled more than a "sheer possibility that [Shaw] acted unlawfully" to satisfy the *Twombly* and *Iqbal* standard and Deluxe's allegations are more than sufficient to state a claim under Rule 8.  *See Iqbal*, 556 U.S. at 678.  Moreover, it is more than plausible that the trade secret information Shaw acquired in 2014 retained economic value in 2016, as Deluxe asserted that "[financial institution] accounts tend to go up for renewal every three to five years."  (Am. Compl. ¶ 56.)

[4] The parties have not discussed, and the Court is not aware of any decision on, whether vicarious liability exists under DTSA.

employer can be held vicariously liable under the OUTSA. *See First Colony Life Ins. Co. v. Berube*, 130 F.3d 827, 829 (8th Cir. 1997).

OUTSA – like other Uniform Trade Secrets Act ("UTSA") jurisdictions – provides that the chapter does not affect "[o]ther civil remedies that are not based on misappropriation of a trade secret." Ohio Rev. Code § 1333.67(B)(2). Nearly every UTSA jurisdiction has held that similar provisions suggest vicarious liability, as a "general civil liability principle[]," is unaffected by the UTSA because vicarious liability is a civil remedy not based on misappropriation of trade secret. *See, e.g.*, *Thola v. Henschell*, 164 P.3d 524, 528-29 (Wash. Ct. App. 2007).

Moreover, courts recognize that the preemption provision found also in UTSA and OUTSA, which "displace[s] conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret," Ohio Rev. Code § 1333.67(A), is not a barrier for vicarious liability because vicarious liability does not fit within any of those enumerated forms of conflicting types of law. *See Newport News Indus. v. Dynamic Testing, Inc.*, 130 F. Supp. 2d 745, 750-51 (E.D. Va. 2001) (holding the Virginia UTSA does not preempt vicarious liability because "[r]espondeat superior is not an independent conflicting tort, civil claim or remedy. Rather, it is a legal precept that presupposes the existence of an underlying claim").

The sole UTSA jurisdiction that does not allow for vicarious liability under its trade secret statute is Indiana, which has different statutory language than OUTSA and other UTSA jurisdictions. *Infinity Prods., Inc. v. Quandt*, 810 N.E.2d 1028, 1033-34 (Ind. 2004). Indiana's statute provides that "[t]he chapter displaces all conflicting law of

this state pertaining to the misappropriation of trade secrets, except contract law and criminal law." Ind. Code § 24-2-3-1(c). Thus, where Ohio and the majority UTSA jurisdictions explicitly state that its trade secret statute will not preempt "other civil remedies," Indiana's statute impliedly preempts "other civil remedies."

Because OUTSA's statutory provisions align with the majority of UTSA jurisdictions, the Court believes the Ohio Supreme Court would follow the majority approach. "[W]hen possible, we construe the UTSA to achieve uniformity among [the 47] jurisdictions that have enacted it." *Thola*, 164 P.3d at 528. Because OUTSA has relevant language which other courts have relied upon to support their determination that vicarious liability is compatible with a UTSA, the Court finds that Deluxe pled a plausible claim for relief on the grounds of vicarious liability and will deny Defendants' motions to dismiss on those grounds.

**III.    TORTIOUS INTERFERENCE AND UNJUST ENRICHMENT** (Counts V and VI)

Defendants also move to dismiss Deluxe's tortious interference and unjust enrichment claims, arguing those claims are preempted under OUTSA. Defendants maintain that these common-law claims are inconsistent with Deluxe's OUTSA claim because the common-law claims are based on the same operative facts. *See Stolle Mach. Co. v. RAM Precision Indus.*, 605 F. App'x 473, 484-85 (6th Cir. 2015).

Assuming Defendants are correct that OUTSA preempts Deluxe's common law claims, "[a]lternative pleading is permitted and is not a basis to dismiss either or both well pled, inconsistent legal theories." *Lunkenheimer Co. v. Pentair Flow Control Pac.*

*PTY Ltd.*, No. 11-824, 2014 WL 4450034, at *5 (S.D. Ohio Sept. 10, 2014) (discussing Fed. R. Civ. P. 8(d)(2)).  Rule 8(d)(2) provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."

Here, Deluxe may alternatively plead an OUTSA claim and the common-law claims.  *See Teknol, Inc. v. Buechel*, No. C-3-98-416, 1999 WL 33117391, at *2-3 (S.D. Ohio 1999) (allowing under Rule 8(d)(2) a defendant to plead in the alternative an unjust enrichment claim and breach of contract claim).  Therefore, the Court will deny the Defendants' motions to dismiss the tortious interference and unjust enrichment claims.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Shaw's Motion to Dismiss [Docket No. 35] is **DENIED**.

2. Defendant Harland Clarke Corp.'s Motion to Dismiss [Docket No. 38] is **DENIED**.

DATED: August 3, 2017             \_\_\_\_\_s/John R. Tunheim_____
at Minneapolis, Minnesota.            JOHN R. TUNHEIM
                                                Chief Judge
                                  United States District Court